IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | EP-10-CV-273-KC |
| | § | |
| H&W INDUSTRIAL SERVICES, INC., | § | |
| | § | |
|   Defendant. | § | |

## ORDER

On this date, the Court considered "Plaintiff's Motion for Summary Judgment" ("Motion"), ECF No. 14. For the reasons set forth below, the Motion is **GRANTED**.

## I. BACKGROUND

The following facts are derived from Plaintiff's Complaint and Motion. Because Defendant did not file a response to the Motion, the Court considers these facts undisputed for the purposes of this Order. *See* Fed. R. Civ. P. 56(e)(2) (if a party "fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for the purposes of the motion").

### A. The Policy

Plaintiff provided general liability insurance coverage to Defendant under Policy No. T02AM98319 (the "Policy"). Mot. App. 106, ECF Nos. 15-16.[1] The Policy was a Commercial General Liability policy with an effective period of February 5, 2002, through February 5, 2003. *Id.* at 1. In the Policy, Plaintiff assumed a duty to defend Defendant against suits for damages

---

[1] Plaintiff's Appendix is split into two docket entries. ECF No. 15 contains pages 1-53, and ECF No. 16 contains pages 54-106.

based, in relevant part, on "property damage" caused by an "occurrence" during the coverage period. *Id.* at 30. "Property damage" and "occurrence" were specifically defined in the policy. "Property damage" was defined as:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* at 42.

"Occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 41.

The Policy contained several exclusions from coverage. As relevant here, the Policy contained an exclusion for "Damage To Your Product," which specifically excluded "'Property damage' to 'your product' arising out of it or any part of it." *Id.* at 33. "Your product" was defined in the Policy as

    a.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
        (1)    You;
        (2)    Others trading under your name; or
        (3)    A person or organization whose business or assets you have acquired; and
    b.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes
    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
    b.    The providing of or failure to provide warnings or instructions.

*Id.* at 42.

The Policy also contained an exclusion for "Damage To Impaired Property Or Property Not Physically Injured," which specifically excluded

>"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
>This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*Id.* at 33.

"Impaired property" was defined in the Policy as

>tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>a. it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>b. You have failed to fulfill the terms of a contract or agreement;
>
>if such property can be restored to use by:
>
>a. The repair, replacement, adjustment or removal of "your product" or "your work" or
>b. Your fulfilling the terms of the contract or agreement.

*Id.* at 40.

**B.      The Underlying Lawsuit**

On January 15, 2010, Defendant was sued in *Texas Department of Transportation and the City of El Paso v. H&W Industrial Services, Inc., et al.*, Cause No. 2010-152 in the 34th Judicial District Court of El Paso County, Texas ("Underlying Lawsuit"). *Id.* at 79, 106. According to the First Amended Original Petition ("Amended Petition") in the Underlying Lawsuit, Texas Department of Transportation ("TXDOT") entered into a contract with Defendant in the summer of 2000 under which Defendant was to provide signs for use by TXDOT as well as over 10,000 street name signs for use by the City of El Paso ("the City"). *Id.* at 91. These signs were to be manufactured to certain standards specified in the contract, including a guarantee of minimum performance standards for a period of seven years. *Id.*

Defendant subcontracted with other parties to manufacture various parts of the signs. *Id.*

TXDOT and the City alleged in the Amended Complaint that the street signs began to deteriorate soon after placement on the city streets. *Id.* at 92. Specifically, they alleged a film placed on the signs, which was supplied by one of Defendant's subcontractors, began to shrink and discolor, changing the appearance of the signs and warping the lettering and numbering. *Id.* This allegedly made the signs unserviceable and created a traffic hazard, requiring replacement of all of the signs. *Id.*

TXDOT and the City as a third-party beneficiary to the contract asserted two causes of action in the Amended Petition, one for breach of contract and another for breach of express and implied warranties. *Id.* at 92-93. These causes of action were based on the signs' failure to meet the performance requirements specified in the contract. *Id.* For damages, TXDOT and the City alleged that they incurred costs "in labor and materials to remove and replace the defective street signs" and also for "the expense of storage of the replaced street signs and other incidental damages." *Id.* at 93. TXDOT and the City also asserted claims for costs and attorneys' fees, pre- and post-judgment interest, and certain additional sums if the defendants were to lose an appeal of a judgment against them. *Id.*

Defendant asked Plaintiff to defend and indemnify it against the Underlying Lawsuit. *Id.* at 106. Plaintiff sent a letter to Defendant denying that request on the grounds that TXDOT and the City did not allege any damage arising from an "occurrence." *Id.* at 100. Plaintiff also denied the request because, to the extent that the Underlying Lawsuit did allege damage arising from an "occurrence," the damages fell into the exclusions in the policy for damage to "your product" and possibly fell into the exclusion for "your work." *Id.* at 100-02. Plaintiff also reserved the right to disclaim coverage for damage that occurred outside the coverage period and

to assert any right or defense under any term of the Policy. *Id.* at 102.

## II. DISCUSSION

### A. Standard

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). The court resolves factual controversies in

favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000)).  Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If the opposing party "fails to properly address another party's assertion of fact," the court may "give an opportunity to properly support or address the fact," "consider the fact undisputed for the purposes of the motion," "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it," or "issue any other appropriate order." Fed. R. Civ. P. 56(e).  But, "[a] motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule." *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) (citing *John v. La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985)).

    **B.**    **Plaintiff's Motion for Summary Judgment**

Plaintiff has moved for summary judgment that it has no duty to defend Defendant in the Underlying Lawsuit, and no duty to indemnify Defendant for any judgment that may result from the Underlying Lawsuit.  Mot. 11.  As the basis for the Motion, Plaintiff argues that the allegations in the Underlying Lawsuit do not constitute "property damage" caused by an

6

"occurrence," or, in the alternative, that the "your products" and "impaired property" exclusions preclude any duty to defend. *Id.* at 2-9. Plaintiff argues that it has no duty to indemnify for the same reasons. *Id.* at 9-11. Defendant did not respond to the Motion.

### 1. Duty to defend

The Court is exercising its diversity jurisdiction, and so applies Texas law to this case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Holt v. State Farm Fire & Cas. Co.* 627 F.3d 188, 191 (5th Cir. 2010). Under Texas law, an insurer's duty to defend is determined by application of the "eight-corners rule." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam). "This rule requires the finder of fact to compare only the allegations in the underlying suit-the suit against the insured-with the provisions of the insurance policy to determine if the allegations fit within the policy coverage." *Standard Waste Sys. Ltd. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 399 (5th Cir. 2010) (quotation marks omitted). This rule is to be applied liberally, resolving all doubts in favor of the insured. *Id.* However, "courts must not 'read facts into the pleadings,' 'look outside the pleadings, or imagine factual scenarios which might trigger coverage.'" *Id.* (quoting *Merchs. Fast*, 939 S.W.2d at 142).

In applying the eight corners rule, "the insured bears the burden of showing that the claim against it is potentially within the policy's coverage," while "the insurer bears the burden of establishing that an exclusion in the policy constitutes an avoidance of or affirmative defense to coverage." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996). Policies are strictly construed against the insurer to avoid exclusion of coverage. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). However, when a term is unambiguous, and "susceptible of only one reasonable construction," the strict construction rule does not apply.

7

*Id.*; *Canutillo*, 99 F.3d at 701. Where there is more than one pleading in the underlying suit, "the duty to defend is determined by examining the latest, and only the latest, amended pleadings." *Rhodes v. Chicago Ins. Co., a Div. of Interstate Nat. Corp.*, 719 F.2d 116, 119 (5th Cir. 1983).

The Court begins its analysis of Plaintiff's duty to defend the repair/replacement and storage damages claims by examining the Policy exclusions, because the Court finds that they are dispositive. That is, though Defendant has not carried its burden of establishing coverage under the Policy because it has not responded to Plaintiff's Motion, even if Defendant could carry its burden and establish coverage, Plaintiff has carried its burden by establishing the claims in the Underlying Lawsuit would fall within the exclusions to the Policy.

First, the Court finds that the underlying plaintiffs' claim for costs "in labor and materials to remove and replace the defective street signs" fall within the "your products" exclusion. This exclusion provides that "'property damage' to 'your product' arising out of it or any part of it" is not covered by the Policy. Mot. App. 33. The Policy defines "property damage" as physical injury to or loss of use of property. *Id.* at 42. The Policy defines "your product" as goods manufactured, sold, handled, or distributed by Defendant, including warranties for those goods. *Id.* Here, the plaintiffs in the Underlying Suit alleged that the street signs were physically damaged, in that a film on the signs began to shrink and discolor, and could not be used as a result. *Id.* at 91-92. They also alleged Defendant sold the signs, and provided warranties and representations of their "fitness, quality, durability, [and] performance" with them. *Id.* at 92. The underlying plaintiffs also allege that the signs became damaged because they did not meet the manufacturing specifications - in other words, because of defects in the materials or manufacturing process used. *Id.* at 92-93. The Court finds that the damage to the signs qualifies as physical injury or loss of use, and the signs and warranties fall within the definition of "your

product." The Court also finds the damage or loss of use arose from the products themselves. Therefore, the underlying plaintiffs' claims for damages based on the removal and replacement of the signs are excluded under the "damage to your products" exclusion. *See Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 776 (5th Cir. 2004) (applying a "your product" exclusion to similar facts); *Sigma Marble & Granite-Houston, Inc. v. Amerisure Mut. Ins. Co.*, No. H-09-3942, 2010 WL 5464257, at *11 (S.D. Tex. Dec. 28, 2010) (same).

Second, the Court finds that the underlying plaintiff's claims for costs incurred in storing the signs after they were removed and replaced falls within the "impaired property" exclusion. This provision excludes, in relevant part, claims based on "property damage" to property that was not physically injured arising from a "defect" or "deficiency" in "your product," or from a "failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." Mot. App. 33. Substituting in the relevant definitions from the Policy, the "impaired property" exclusion may be restated as an exclusion for claims based on a loss of use of uninjured property, where the loss of use arises from a defect in a product sold by the insured or from the insured's failure to perform a contract. Assuming the claims for storage expenses in the Amended Petition implicitly evidence a loss of use of property that was not physically injured, any such loss of use would necessarily arise from the defect in the signs sold by Defendant or Defendant's failure to provide acceptable signs as required by the contract. As described above, the signs' defect or Defendant's failure led to the signs' removal and that led to the signs' storage. Therefore, the underlying plaintiffs' claims for damages based on the storage of the signs are excluded under the "impaired property" exclusion. *See Mid-Continent Cas. Co. v. Camaley Energy Co., Inc.*, 364 F. Supp. 2d 600, 607-08 (N.D. Tex. 2005) (applying an "impaired property" exclusion to a suit against an insured that was based on a defect in the

insured's product, which defect also constituted a failure by the insured to properly perform a contract); *Gibson & Assocs., Inc. v. Home Ins. Co.*, 966 F. Supp. 468, 474-75 (N.D. Tex. 1997) ("Courts in other jurisdictions have found [the impaired property] exclusion to remove from coverage claims arising at bottom solely from a breach of contractual duties.").

Because the claims in the Underlying Lawsuit fall within the "your product" and "impaired product" exclusions, the Court concludes that Plaintiff has no duty to defend Defendant against the Underlying Lawsuit.

### 2.     Duty to indemnify

The duty to indemnify and the duty to defend are "'distinct and separate duties." *D.R. Horton-Texas, Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 743 (Tex. 2009).  While the duty to defend is determined based on the allegations in the complaint in the underlying action, "it is well settled that the 'facts actually established in the underlying suit control the duty to indemnify.'" *Id*. at 744 (quoting *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009)).  Thus, the question of an insurer's duty to indemnify ordinarily cannot be resolved until the liability of the insured is established in the underlying litigation.  *Id*. at 745.  The only exception to this rule is "when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*.  *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis in original).  This exception does not mean that where there is no duty to defend, there is necessarily no duty to indemnify.  *Markel*, 300 S.W.3d at 745.  While some courts have so interpreted the holding in *Griffin*, the Texas Supreme Court has recently clarified that such decisions were "mistaken[]." *Id.* at 744 n.4.  The Texas Supreme Court has instead instructed that the duties to defend and indemnify are "independent, and the existence of one does not

necessarily depend on the existence or proof of the other." *Id*. at 745.  A *Griffin* determination that the same reasons eliminating the duty to defend also eliminate the duty to indemnify is therefore "fact-specific," *id*. at 744, and can only be made if it is an "impossibility" that the claims could be "transformed by proof of any conceivable set of facts into [claims] covered by the insurance policy." *Id*. at 745.

The *Griffin* exception applies here.  Unlike in *Markel*, where the insured party presented evidence at summary judgment indicating that facts proven in the underlying lawsuit might prove the insurer owed the insured a duty to indemnify, *see id.*, Defendant has presented no evidence possibly supporting coverage to the Court, and in fact has failed to respond to the Motion.  Nor is it apparent what evidence could establish Plaintiff's duty to indemnify Defendant.  Regarding the claim for damages for the removal and replacement of the street signs, the Court cannot conceive what facts Defendant might prove in the Underlying Lawsuit that would defeat the conclusion that the film on the signs shrank and discolored because of a defect in the materials or manufacturing process.  Similarly, the claim for the storage costs for the signs cannot realistically be resolved in a way that would support a finding of a duty to indemnify.  Because the signs only needed to be removed and replaced due to their internal defects, the need to store them and the costs of doing so must also have arisen from the defective signs themselves.  Accordingly, the Court finds that Plaintiff has no duty to indemnify Defendant for the claims in the Underlying Lawsuit.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, ECF No. 14, is **GRANTED**.  The Court will enter final judgment by separate order.

**SO ORDERED.**

**SIGNED** on this 1st day of February, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE